JOSEPH PULVINO *vs.* TOWN OF YARMOUTH & others.

Barnstable.    February 5, 1934. — March 27, 1934.

Present: CROSBY, PIERCE, WAIT, FIELD, & DONAHUE, JJ.

*School and School Committee*, Superintendency union. *Contract*, What constitutes.

The school committee of a town rightfully may discharge at will at any time a teacher employed for a single year.

A superintendency union formed under G. L. (Ter. Ed.) c. 71, §§ 61 *et seq.*, has no power to employ teachers.

Each of the school committees forming a superintendency union under G. L. (Ter. Ed.) c. 71, §§ 61 *et seq.*, must act independently in employing teachers; such committees cannot bind their respective towns by a joint contract of employment with a teacher.

CONTRACT.    Writ dated June 27, 1932.

The action was tried in the Superior Court before *Hanify,* J. Material evidence is stated in the opinion. The judge ordered a verdict for the defendants. The plaintiff alleged an exception.

*J. D. W. Bodfish,* for the plaintiff.

*C. C. Paine,* for the defendants.

WAIT, J. The plaintiff brings this action of contract against the towns of Yarmouth, Dennis and Brewster to recover salary alleged to be due him under a contract of employment as supervisor of music in their schools. It comes before us upon his exception to an order directing a verdict for the defendants.

The material facts are as follows: Since 1903 the towns have been joined in a superintendency union under St. 1903, c. 299, and an order of the board of education, in accord with which they have employed a superintendent of schools whose salary was apportioned among the three towns. Since 1913 the joint committee has employed a supervisor of music, each town paying a proportionate part of the salary. In May, 1929, one Stacy was elected superintendent of schools for the union for three years. Stacy acts also as secretary of the school committee of Yarmouth. At the annual April meeting of the joint committee for the three towns it voted "that the matter of teachers of Art and Music be left with Mr. Stacy for investigation and a report be made to the several committees at a later date." The plaintiff's name was suggested to the superintendent; and under date of June 18, 1931, Stacy wrote to him: "You may have the appointment as Music Supervisor in this district at the sum stated in our interview last Saturday, namely $1,600 per year," signing as "Superintendent of Schools." Stacy reported his selection of the plaintiff to the school committee of Yarmouth at one of its regular meetings, and orally made report to the school committees of Dennis and Brewster, before the beginning of the school year in September, 1931. Under date of September 1, 1931, Stacy notified the plaintiff: "You have been $\frac{\text{elected}}{\text{appointed}}$ a regular teacher in the public schools of Yarmouth, Dennis & Brewster for the

term of one year at a salary of $1600. per year from Sept. to June, 1931, 32 and have been assigned to the Music Supervisorship School." This letter was on a form of the "School Committee of Yarmouth"; and was signed "Supt. of Schools      For the School Committee of Yarmouth." The plaintiff entered on the work and continued at it until the Christmas vacation period. The school year was forty weeks of five days each. The plaintiff in each week worked two and one half days in Yarmouth, one day and a half in Dennis, and one day in Brewster. He was paid every two weeks $40 by Yarmouth, $24 by Dennis, and $16 by Brewster, upon payrolls made up by the superintendent for each of the towns which included the names of all teachers, the plaintiff's and the superintendent's. The school committee of each town approved for payment the amount stated. Yarmouth thus paid fifty per cent, Dennis, thirty per cent, and Brewster, twenty per cent, of the salary. At a joint meeting of the committees of the three towns held December 9, 1931, the superintendent reported dissatisfaction with the plaintiff. Unanimously the meeting voted "that Mr. Stacy be authorized to substitute or to secure a Supervisor of Music more suited to the needs of the Superintendency Union." Within a few days the superintendent saw the plaintiff and asked him to resign. The plaintiff did not resign. No further action was taken by the joint committee. On December 28, 1931, the school committee of Yarmouth unanimously voted that "in accordance with action taken on December 9 . . . the Superintendent of Schools be authorized to inform Mr. Pulvino that his services would not be required after December 31, 1931." On January 12, 1932, the school committee of Brewster by vote "accepts and confirms as its will and action the action of the Superintendent in giving Mr. Pulvino a written notice under the date of December 29, 1931 that his services as Supervisor of Music would be dispensed with after December 31, 1931." On January 22, 1932, the school committee of Dennis passed a vote worded like that of Brewster. No other votes were passed by the joint or by the several committees in this matter. Correspondence between plain-

tiff and superintendent followed; but, though he held himself ready to serve throughout the remaining school year, the plaintiff taught no more, and another was elected and served as supervisor of music.

We cannot yield to the plaintiff's contention that a contract was made with him binding upon the defendants, followed by an illegal breach. The record is bare of any election of the plaintiff as a teacher by the joint board or the several school committees of Dennis and Brewster; while there is nothing more than the letter of Stacy under date of September 1, 1931, to show action in electing or appointing the plaintiff by the school committee of Yarmouth. If we were to assume that he ever was regularly elected a teacher, he would still be unable to show wrongful action in his discharge. It has long been the law that a school committee could discharge a teacher at any time. St. 1844, c. 32. *Knowles* v. *Boston,* 12 Gray, 339. The changes made by statute in securing permanency of tenure and requiring certain procedure for a valid discharge relate only to teachers who are "on tenure," and do not apply to one employed for a single year. G. L. (Ter. Ed.) c. 71, §§ 41, 42. *Duffey* v. *School Committee of Hopkinton,* 236 Mass. 5. The plaintiff is not within the protection of those statutes. He could properly be discharged at the will of the committees.

Moreover, this plaintiff never had a valid contract of employment. The powers and duties of a superintendency union as fixed by statute, now G. L. (Ter. Ed.) c. 71, §§ 61–67, 53A, 53B, do not extend to the election of teachers. Other than to employ a superintendent, such a union has power to employ only school physicians and school nurses. St. 1921, c. 357 (now G. L. [Ter. Ed.] c. 71, § 53A). The union clearly could not endow the superintendent with a power which it did not itself possess. Nor could the several school committees of Yarmouth, Dennis and Brewster bind their towns by a joint contract. No such authority is granted to them. In employing and in fixing compensation of teachers each town committee must act independently.

The plaintiff rendered no service after December 31, 1931, and we need not consider whether, had he done so and the

service been accepted, recovery could be had in any form of action. We cannot conceive any way in which a joint judgment against the several towns could be obtained.

*Exceptions overruled.*