Esteban Núñez Meléndez, Petitioner and Appellee, v. Jaime Benítez, Chancellor of the University of Puerto Rico, Respondent and Appellant.

No. 9271. Argued February 11, 1946.—Decided March 29, 1946.

On rehearing April 30, 1946.

*James E. Curry* for appellant.   *R. Arjona Siaca* for appellee.

MR. CHIEF JUSTICE TRAVIESO delivered the opinion of the court.

The present appeal has been taken by the respondent, Chancellor of the University of Puerto Rico, from a judgment of the District Court of San Juan, whereby he was ordered "to issue in favor of the petitioner, Esteban Núñez Meléndez, a permanent appointment as Instructor in Pharmacognosy and Pharmaceutical Theory and Practice in the University of Puerto Rico, said appointment to be retroactive so as to cover the whole of the university year 1945–46."

The petitioner and appellee moved to dismiss the appeal on the ground that it was frivolous. At the hearing of the motion the parties presented extensive arguments on the substance of the case, which they agreed to submit, together with the motion, for decision on the merits. The motion must be denied. A slight examination of the pleadings and of the legal questions involved suffices to conclude that the appeal is not frivolous. We will, therefore, begin by making a summary of the facts alleged in the petition and admitted by the respondent.

In 1935 the petitioner was appointed Assistant Instructor in Pharmacognosy and Pharmaceutical Theory and Practice

in the University of Puerto Rico, which position he held until 1941, when he was appointed to that of instructor in the same subjects. He served in the latter capacity, uninterruptedly, from 1941 to the end of the university year 1944–45.

There is no dispute as to the fact that the services rendered by the petitioner as instructor were deemed entirely satisfactory. Moreover, the chancellor admits that the petitioner has the necessary cultural preparation and academic degrees to enable him to fill satisfactorily the said position of instructor.

When making the appointments for the academic year 1945–46, the chancellor issued to the petitioner an appointment as instructor in the subjects mentioned above, but he refused to authorize the appointment on a permanent basis as he had done in the case of other members of the teaching personnel whose qualifications were similar to those of the petitioner.

The grounds of the petition for mandamus are:

1. The refusal of the chancellor to issue a permanent appointment in favor of the petitioner violates the letter and spirit of § 16 of Act No. 135, known as "Act of the University of Puerto Rico," approved May 7, 1942.

2. The duty of issuing a permanent appointment in favor of the petitioner falls upon the chancellor in accordance with § 9 of the said "Act of the University of Puerto Rico."

3. The duty which the University Act imposes upon the chancellor, to issue to the petitioner a permanent appointment, is of a ministerial character, without there being any discretion vested in the chancellor to refuse to comply with the provisions of the statute.

The chancellor moved to dismiss the petition for insufficiency:

(1) Because it did not appear that the petitioner had exhausted the administrative remedy by appeal to the Superior Educational Council. Section 5, Act to Reorganize the University of Puerto Rico.

(2) Because it did not appear that the duty sought to be enforced was one which was clearly and specially enjoined by the Act as a duty resulting from any office, trust, or station.

(3) Because not all the persons required to act so as to render valid the duty sought to be enforced had been joined as respondents.

(4) Because the duty in question involves the exercise of high discretion and the petition fails to allege facts constituting a manifest abuse of discretion.

(5) That the legal relationship between the petitioner and the university was contractual in character and there was not involved any public office which might be protected by mandamus.

The motion to dismiss the petition was denied and the respondent thereupon asked that judgment be rendered on the pleadings. The lower court then entered judgment in accordance with the prayer of the complaint, and adjudged the respondent to pay costs and $300 as attorney's fees, on the ground of obstinacy.

The appellant bases his appeal on the same grounds set forth in his motion to dismiss the petition, to wit: (a) That, since the petitioner had an ample, speedy, and adequate administrative remedy available for the protection of his right, such as an appeal to the Superior Educational Council, he should have exhausted that remedy before resorting to mandamus; and (b) that the duty sought to be enforced against the chancellor is not one which is clearly and specially enjoined by the statute as a duty resulting from an office, trust, or station, it being on the contrary a duty the performance of which involves the exercise of discretion on the part of the chancellor.

The question of whether or not the remedy by appeal to the Superior Educational Council (§ 5, Act of the University of Puerto Rico, of May 7, 1942) is adequate or sufficient, is not involved in the present case, inasmuch as we are not

dealing with any act or decision of the chancellor from which an appeal might have been taken by the petitioner. What we have before us is a controversy between the chancellor and the petitioner, regarding the construction and scope of § 16 of said Act of the University of Puerto Rico. The chancellor urges that under said Section he is vested with discretion to issue or refuse to the petitioner a permanent appointment at the end of three years of satisfactory services, and the petitioner on the contrary maintains that after the expiration of that period, by virtue of the Act itself, and without the necessity of any further action on the part of the chancellor, the appointment issued in his favor to teach in the university acquires the permanent character provided by the statute.

██ Under the provisions of § 2 of the Uniform Declaratory Judgment Law approved April 25, 1931 (Laws of 1931, p. 378),[1] the petitioner is entitled to a judicial determination of the difference existing between him and the Chancellor of the University in regard to the construction of the University Act, and also to a declaration of his rights and status as a member of the teaching personnel of the university. *Smith* v. *City Commission of Birmingham,* 336 Ala. 114, 181 So. 122; *Hughes* v. *Board of Education of New York,* 249 App. Div. 158 (N.Y.); Borchard, Declaratory Judgments, 2d ed., pp. 25–28 and 861.

The Rules of Civil Procedure for the Courts of Puerto Rico, which became effective on September 1, 1943, provide that "There shall be one form of action to be known as 'civil action'" (Rule 2); and that "Any error in the title of the action brought or in the prayer for relief shall not preclude the court from disregarding the error thus committed and granting the appropriate remedy in accordance with the pleadings and the proof." (Rule 81 (*b*).)

---

[1] "Section 2.—(*Power to construe, etc.*)—Every person . . . whose rights, status or other judicial relations are affected by any statute, . . . may obtain a determination of any difference in regard to the construction or validity of said statutes, . . . and also a declaration of the rights, status or other judicial relations derived therefrom."

We will, therefore, proceed to consider and decide the case as if we were dealing with an action for a declaratory judgment. The University Act provides as follows:

"Section 16.—The appointments of the teaching, technical, and administrative personnel, with the exception of those officials in whose appointments the Superior Educational Council intervenes, *shall have a permanent character* after the expiration of three (3) years of satisfactory services, from and after the approval of this Act; . . . . . . . .

"A member of the teaching, technical, or administrative personnel, whose appointment may have a permanent character, shall not be removed without the previous preferment of charges and an opportunity for defense." (Italics ours.)

If, as claimed by the appellant, the lawmaker had intended to leave the matter of the appointment of the teaching personnel of the university, even after the expiration of three years of satisfactory services, to the absolute discretion of the chancellor, it would have been sufficient for this purpose to enact § 9 of the University Act, which confers the power of appointment on the chancellor, subject to the limitation that said appointments may be revoked by the Superior Educational Council when, in its judgment, they are prejudicial to the interests of the university. That such was not the legislative intent is shown beyond doubt by the clear and definite language of § 16, *supra.* The lawmaker sought to raise and dignify the teaching personnel of the university by placing them, after a probational period, beyond the reach of human passion and the vicissitudes of politics; and he provided in effect that when a professor or instructor appointed to teach in the university shall have rendered satisfactory services to that institution for a period of three years counted from May 7, 1942, the date on which the University Act became effective, his appointment shall have or acquire *ipso facto,* a permanent character, and that after said appointment has become permanent, the professor or instructor involved shall not be removed "without the previous preferment of charges and an opportunity for defense."

818

The chancellor admits that the services rendered by the petitioner during those three years have been satisfactory; but he insists, in accordance with his own construction of the statute, that the legal relationship existing between the petitioner and the University lacks the stability and guaranties inherent in a permanent appointment and that, therefore, until the petitioner receives a permanent appointment from the chancellor, he holds his position subject to the will of the chancellor, who could remove him arbitrarily without the preferment of charges or an opportunity for defense.

Since it has been admitted that the petitioner was appointed to teach as instructor in the University in 1941; that he served in that capacity, uninterruptedly, until the end of the university year 1944–45, that is, during three years counted from the date of the approval of the University Act; and, lastly, that his services during that period were satisfactory, we must and do hereby declare that § 16 of the University Act, *supra, ex proprio vigore* and without the necessity of the intervention of the chancellor, converted the appointment of the petitioner into a permanent appointment with all the rights and privileges appertaining to the status of a permanent member of the teaching personnel of the University of Puerto Rico.

The judgment appealed from is modified by striking out the provision thereof which orders the respondent to issue a permanent appointment in favor of the petitioner and declaring in lieu thereof that the petitioner, under § 16 of the University Act, is entitled to the position of Instructor in Pharmacognosy and Pharmaceutical Theory and Practice in the College of Pharmacy of the University of Puerto Rico on a permanent basis, and as so modified, the judgment is affirmed.

ON MOTION FOR REHEARING

April 30, 1946

Mr. Justice Córdova delivered the opinion of the court.

Defendant asks that we reconsider our judgment.

His initial contention is that we have rendered a declaratory judgment on a controversy which was not before us. The only issue involved in the case, he says, was whether or not he must grant permanent tenure to plaintiff, whereas we have declared that plaintiff's tenure has automatically become permanent by operation of law. If we may state his contention in our own words, the question was not whether plaintiff had earned permanent status, but whether defendant had the duty to acknowledge this status.

If we erred in conceiving the real issue, defendant can hardly complain. He has taken the position, in his briefs and particularly in his argument, that plaintiff is not entitled to permanent status. Indeed, his plea now is that he be given an opportunity in the court below to show he is right in this contention.

But we are not convinced that we erred, nor does defendant make the slightest showing that, were he given another opportunity, the result could possibly be different.

Defendant does not contend that we misconceived his position in argument. He contends that the *pleadings* do not show that he has ever denied that plaintiff is entitled to permanent tenure, and that since the *pleadings* do not show a controversy on this score, the declaratory judgment is erroneous.

It is quite true that there is no express statement in the pleadings that defendant has denied plaintiff's right to per-

manent status. But the pleadings show that defendant has refused him a permanent appointment. Were this all that is alleged, it would perhaps not be enough, since defendant's refusal might be based solely on the theory that a permanent appointment was unnecessary. This would be a somewhat ingenuous and entirely unrealistic appraisal of the controversy, but it might be technically required. The complaint, however, alleges a little more. It alleges that defendant has issued permanent appointments to others. And it alleges that the reason for defendant's refusal is the hostility to plaintiff of the dean of plaintiff's school. It would seem clear that these allegations of fact exclude the possibility that defendant's refusal to acknowledge plaintiff's right is due to his belief that the acknowledgment is unnecessary. But if there were any doubt as to the construction to be given to the allegations of the complaint, they should be resolved in the pleader's favor. Indeed, defendant himself made a very excellent analysis of the true construction to be given the complaint, in his main brief, from which we quote:

"The Court should consider a further question whether it is really the duty of appointment that the plaintiff here seeks to coerce. In his complaint he does not claim that he has not been appointed. . . . It appears that the plaintiff already has his appointment. . . . The complaint does not reveal upon what facts the plaintiff bases his conclusion that the appointment is good for only one year. The law provides that appointments shall be permanent after three years of satisfactory service. If, as he alleges, he has given such service for such period, then his new appointment may well become permanent by operation of law. . . .

"At the risk of going outside the record, let us assume that his difficulty arises from some incidental thing that the Chancellor has said in the course of making the appointment, such as, 'nombro a usted para desempeñar el cargo . . . *por nueve meses, para y durante el año académico de 1945-46.*' The complaint then boils down to a desire on the plaintiff's part, not to get an appointment, but to only get the Chancellor to retract his supposed statement that the appointment is not permanent. In other words, instead of an appointment, the plaintiff really wants a sort of a declaratory judg-

ment by the Chancellor stating the *legal conclusion* that his tenure is permanent. Or perhaps he wants a finding by the Chancellor as to the satisfactory character of his services which, in terms, would make his tenure permanent. But there is nothing in the law especially imposing upon the Chancellor the duty of making such a finding or of issuing such a declaratory judgment. If the plaintiff wants a declaration of his legal status, he could have gotten it by asking the District Court for a declaratory judgment under the usual procedure." . . .

The pleadings thus do show what the argument before us showed was the real controversy, namely, plaintiff's right to permanent status. This controversy, the only real controversy in the case, is settled by our judgment.

■ Of the several other points raised in defendant's motion none merits detailed consideration except his contention that we erred in affirming the lower court's award of attorney's fees to plaintiff. He is right. We have held that defendant's appeal was not frivolous. We do not feel defendant can be properly charged with temerity in contesting this suit, which aside from the substantial questions raised, involves for the defendant an important question of policy not heretofore passed on by the courts. The judgment should therefore be modified in the sense of striking the award of attorney's fees to plaintiff.